Wilkin, J.
The question raised by the demurrer is whether, by the chapter of the General *78 Code entitled “Salaries of County Officers,” the recorder is denied extra compensation above his annual salary for making the general index described in the petition. The petition recites that “Said recorder entered in said general index to mortgages, under the appropriate heads, the names of the parties to said mortgages, alphabetically arranged, both as to surnames and given names, the number and page of the volume where the mortgage is recorded, the number of acres conveyed, the range, township, section and subdivision where the property conveyed is located, the consideration of such conveyance and the date of cancellation.” The defendants contend that this describes an index to the mortgage records only, and not a general index to the records of all the real estate in the county, as defined by Section 2766, General Code. Instead of that section, they should have referred us to Section 1154, Revised Statutes, which was the law in force at the time of the transaction, as follows:
“In any county where, in the opinion of the county commissioners, the same is needed, and they so direct, the recorder shall, in addition to the alphabetical indexes, make, in books prepared for that purpose, general indexes to the records of all the real estate in the county, by placing under the heads of the original surveyed sections or surveys, or parts of a section or survey, squares, subdivisions, or lots; on the left page of such index book, first, the name of the grantor or grantors; second, next to the right, the name of the grantee or grantees; third, the number and page of the record where the instrument is found recorded; fourth, *79 the character of the instrument, to be followed by a pertinent description of the property conveyed by the deed, lease, or assignment of lease; and on the opposite page, in like manner, all the mortgages, liens, or other incumbrances affecting said real estate; and for his services in making such description and noting incumbrances, he shall receive for each tract described five cents, in addition to his other fees.”
The defendants say that the legislature understood that some counties might not want the extensive and costly index thus provided for, and therefore by Section 2767, General Code, provided for other indexes, and by Section 2780 authorized the county commissioners to fix the recorder’s compensation for making the same at five cents for each complete entry; and they say this work was done under said sections.
They argue that this was not the ordinary work of the office covered by the salary, that the recorder might have refused to do it and that the commissioners could not have compelled him to do it for nothing. And so they conclude that the recorder was entitled to draw from the county treasury and retain the several installments of pay which were allowed him by the county commissioners for this extra work.
Now let us examine the so-called “salary law.” It declares:
Section 2977, General Code, “All the fees, costs, percentages, penalties, allowances and other perquisites collected or received by law as compensation for services by a county auditor, county treasurer, *80 probate judge, sheriff, clerk of courts, or recorder, shall be so received and collected for the sole use of the treasury of the county in which they are elected and shall be held as public moneys belonging to such county and accounted for and paid over as such as hereinafter provided.”
■ “Section 2989. Each county officer herein named shall receive out of the general county fund the annual salary hereinafter provided, payable monthly upon warrant of the county auditor.”
■ “Section 2995. Each recorder shall receive sixty dollars for each full one thousand of the first fifteen thousand of the population of the county, as shown by the last federal census next preceding his election ; fifty dollars per thousand for each * * * second fifteen'thousand of such population; forty dollars per thousand for each * * * third fifteen thousand of such population,” etc.
• “Section 2996. Such salaries shall be instead of all fee«, costs, penalties, percentages, allowances and all other perquisites of whatever kind which any of such officials may collect and receive.
“Section 2983. On the first business day of April, July, October and January, and at the end of his term of office, each such officer shall pay into the county treasury * * * all fees, costs, penalties, percentages, allowances and perquisites of whatever kind collected by his office during the preceding quarter or part thereof for official services, which money shall be kept in separate funds and credited to the office from which received.”
•• “Section 2987. The deputies, assistants, clerks, bookkeepers and other employes of such offices *81 shall be paid upon the warrant of the county auditor, from the fees, costs, percentages, penalties, allowances, or 'other perquisites or. sums of whatever kind collected and paid into the county treasury and credited by the treasurer to the fee fund of such offices.”
The failure to pay over to the county treasury the quarterly installments mentioned in the petition, the prosecuting attorney alleges to be a violation of the recorder’s official duty and a breach of his bond. The defendants, however, seek shelter under the language of Section 2978: “Each probate judge, auditor, treasurer, clerk of courts, sheriff and recorder, shall charge and collect the fees, costs, percentages, allowances and compensation allowed by .law, and shall give to the person making payment thereof an official receipt * *
They would have us note the phraseology of the two sections, Sections 2977 and 2978, General Code. The former is, “all the fees, costs, percentages, penalties, allowances and other perquisites collected or received by law” and the latter is, “allowances and compensation allowed by law;” and in this connection they refer to Section 3000: “No such county officer shall make any reduction, abatement, or remission of any fees, costs, percentages, penalties, allowances or perquisites of any kind required by law to be charged and collected by him.” They say the legislature had in mind fixed charges , or . fees prescribed by law when it enacted Sections 2977 and 3000, and not the contract price provided in Section 2780, which was at the time Section .1158, Revised.Statutes, thus; “The recorder for *82 services directed to be performed by the commissioners * * * shall receive such compensation as the commissioners determine * * * and for making the general indexes provided for herein, such sum as is fixed by the commissioners.” The duties prescribed in Sections 2757, 2758, 2759, 2764, 2765, 2766 and 2767, so far as they relate to keeping up indexes, he shall do in the usual and regular work of the office, but the making of other indexes, they say, is extra work, which he- is not required to do for nothing, and for which the commissioners are authorized to alloiv him extra compensation; and that this is by contract rather than by law.
But they cut the ground from under their argument when they concede, on the next page of their brief: “It is true that for the mortgage indexes authorized to be made by the county commissioners, and the compensation for which is fixed solely by the county commissioners ?nd recorder can be said to be an allowance received by law.” ■ Then it does fall under the very language of the statute, “other perquisites received by law” and “compensation allowed by law”—which he is required to pay into the county treasury.
The defendants have based their argument upon the law as it stands in the General Code, whereas the case is governed by the law as it stood in the Revised Statutes; and they have fallen into error. For instance, they declare that it is not the official duty of the recorder to make the general index mentioned in Sections 2766 and 2780; therefore he may decline to do the work, and make Section 2766 a dead letter. The statute in vogue *83 when the work was done, however, was couched in language quite different than that in Section 2766, General Code. Section 1154, Revised Statutes, reads: If the commissioners so direct, “the recorder shall, in addition to the alphabetical indexes, make, in books prepared for that purpose, general indexes to the records of all the real estate.” Certainly this enjoins upon him a duty. Having performed it, he can not now say it was nonofficial service not covered by his salary; nor can his sureties plead that it was not a mandatory duty guaranteed by his bond.
It is true that in State, ex rel., v. Wickham, 77 Ohio St., 1, Judge Davis states that “These ‘general indexes’ are to be made only when in the opinion of the county commissioners they are needed * * *; but the power to direct and the obligation to pay are reciprocal; for, while the recorder shall make the indexes when directed by the commissioners, the statute is just as imperative that he shall receive compensation.” This was true in 1907 when it was pronounced; and it is true that this recorder, Kennedy, has received the allowed compensation. But the salary law has been enacted since Wickham’s case arose in 1905, and the question before us is, May Kennedy keep the allowance or must he pay it into the county treasury, for he was under the salary law when he received it?
In view of the decision in Thorniley et al. v. State, ex rel., 81 Ohio St., 108, he can not now retain for himself the perquisites and allowances which he could claim prior to the enactment of *84 the salary law. As is said in that case, the former law, being incompatible with the later legislation, must yield to it because of the impracticability of harmonizing the earlier and later legislation so that they may be enforced together.
But the defendants quote from Sections 2977 and 3000, and argue that these sections prescribe determinate charges required by law to be collected as fees from patrons of the office in the regular and ordinary course of business, which properly go to the accumulated “fee fund” turned into the treasury, whereas the making of general indexes is extra work, and the compensation thereof is not determined by law, but is a variable perquisite allowed by the commissioners which the statute authorizes him to draw out of the treasury for his personal benefit. And they contend that it is absurd to say that the one statute allows him to draw the money out and the other requires him immediately to pay it back into the treasury. The simple answer to this contention is that the later statute commands that all the fees, allowances and other perquisites of the office granted by the former statute as the recompense of service in that office shall be collected by the officer as formerly, without remission or diminution, and by him paid into the treasury, and in lieu thereof he shall receive an annual salary. This accumulation of fees, allowances, perquisites, etc., in the treasury, becomes a fund for the payment for such assistants in his office as may be needful to the proper discharge of its duties.
*85 This rational scheme was adopted as a convenient method of transition from the fee system to the salary system, without disturbing or diminishing the revenues of the office, which now go to the public treasury. The criticism which the defendants make upon the new system is essentially an animadversion upon the legislative policy of these statutes and nothing more. We have naught to do with that policy but to declare and enforce it. We can not modify and cripple it, under the guise of interpretation, to appease the defendants’ notions of its unreason or unfairness, however wise or otherwise the defendants may be in such matters. Statutes may be cut and shuffled and rearranged so as to appear incongruous. But this is not the proper method of legal construction. We must read them as they are phrased and arranged by the legislature. Some of the statutes brought under review in this case are found under the chapter entitled “County Recorder,” defining the term, revenue and duties of the office; others have been placed in the chapter entitled “Salaries of County Officers.” The same arrangement is pursued in the General Code. The statute defining the salary system is later than the statute prescribing the schedule of fees. If there is any intrinsic conflict the later enactment would prevail, and the provisions regarding fees, compensation and allowance would give way to expressions of legislative intent in the statute prescribing salaries. But a comprehensive view of the two chapters reveals a harmonious and consistent legislative plan which calls for no textual criticism or legal con *86 struction. The language needs no interpretation, because it is simple and positive and its meaning is plain—namely, that county officers shall derive no other emolument from their offices than the definite salary prescribed by law.
The reductio ad absurdum to the argument- of the defendants is that if their reasoning should prevail the very purpose of the salary law would be defeated. According to the plain, compact words of the statute, the Morgan county recorder’s compensation for extra services is covered by his salary. We do not imply that his claim is not honest; we find merely that the law does not recognize it.
The very statute which he cites as the foundation of his right to retain the money which the commissioners allowed him contains the express refutation of it. Section 2780, General Code. It is scarcely a culpable oversight that he and his bondsmen have entirely omitted this significant clause from their brief: “All compensation provided for in this section shall be paid out of the county treasury upon the allowance of the county commissioners and the warrant of the county auditor, and shall be paid into the county treasury to the credit of the recorder’s fee fund.” They proceed in their brief as if this were not in the statute, but were only the prosecuting attorney’s absurd deduction from other language of the statutes; and they charge him with “traveling in a circle.” They mistake; the circle is not in the prosecutor’s logic, it is in the law; whether wisely or unwisely .there, they can not evade it.
Finally, the defendants declaim with vigor that *87 the interpretation of the salary law which the prosecuting attorney contends for, repeals by implication the former statute providing a recompense to the county recorder for extra work which the county commissioners hired him to do. This is true in part at least. Nevertheless we adhere to the principle involved in the first branch of the syllabus of a former parallel case, Thorniley et al. v. State, ex rel., supra, namely: “Although repeals by implication are not favored, earlier legislation must give way when it is necessary to carry out the later expression of the legislative will; and that part of Section 4903, Revised Statutes, which provides for compensation to county commissioners for services rendered as directors of'highways must be regarded as abrogated by the later act * * * giving to the county commissioners a salary and limiting their compensation to the salary designated.”
On the grounds of reason and authority, the decisions of the courts below must be reversed and the cause remanded with instructions to the court of common pleas to overrule the demurrers.

Judgment reversed.

Nichols, C. J., Shauck, Johnson and Wanamaker, JJ., concur.